**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EMMA ZAHNER** | **CIVIL ACTION** |
| **v.** | **NO. 16-2635** |
| **CITY OF PHILADELPHIA, et al.** | |

<u>**MEMORANDUM RE: DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS**</u>

Baylson, J.                                                            **January 18, 2017**

## I.      Introduction

Plaintiff Emma Zahner alleges that she was involuntarily and erroneously
incarcerated, in violation of her Eighth and Fourteenth Amendment rights.  Defendant Jan
Lamper ("Lamper"), the only remaining defendant in the case, now moves for judgment
on the pleadings with respect to Count Five, the only remaining Count in this case,
alleging a 42 U.S.C. § 1983 claim against Lamper.  (ECF 24, "Def.'s Mot.").

For the reasons stated below, Lamper's Motion will be DENIED.

## II.      Procedural History

Plaintiff filed this action in the Court of Common Pleas, Philadelphia County on
May 11, 2016, (ECF 1, Ex. A "Amended Complaint"), which defendants City of
Philadelphia and Terence Clark (together, the "City Defendants") timely removed on
May 27, 2016.  (ECF 1, Notice of Removal).  Defendants Pennsylvania Department of
Corrections, Robert Smith and Lamper (together, the "Corrections Defendants")
consented to the removal.  (<u>Id.</u> at 2).

On May 31, 2016, both the City Defendants and the Corrections Defendants moved to dismiss the Amended Complaint.  (ECF 3, 4).  On June 30, 2016, this Court Ordered as follows: (1) Counts One, Two and Four would be dismissed without prejudice, and with leave to file a Second Amended Complaint; (2) Counts Three and Six would be dismissed with prejudice; and (3) the motion to dismiss Count Five was denied. (ECF 10); Zahner v. City of Philadelphia, No. CV 16-2635, 2016 WL 3569255, at *1 (E.D. Pa. July 1, 2016), appeal dismissed (Oct. 27, 2016).[1]

On July 12, 2016, Plaintiff filed the Second Amended Complaint (ECF 11), which contained all of the Counts originally contained in the Amended Complaint.  On July 13, 2016, the City Defendants moved to dismiss the Second Amended Complaint, and on July 25, 2016, the Corrections Defendants did the same.  (ECF 12, 14).  On August 18, 2016, the Court granted both motions, and ordered that Counts One, Two, Three, Four and Six would be dismissed, this time with prejudice.[2]  (ECF 18); Zahner v. City of Philadelphia, No. CV 16-2635, 2016 WL 4409105, at *1 (E.D. Pa. Aug. 18, 2016). Because the defendants had not challenged Count Five of the Second Amended Complaint, the Court ordered that the case would continue against Lamper only.  (Id.).

On September 16, 2016, Lamper filed an Answer to the allegations contained in Count Five of the Second Amended Complaint (ECF 21), and on October 27, 2016, Lamper filed the instant Motion for Judgment on the Pleadings.  On November 4, 2016,

---

[1]     On July 25, 2016, Plaintiff filed a notice of appeal of the June 30, 2016 Order, which the Third Circuit dismissed on October 27, 2016 for lack of appellate jurisdiction. (ECF 25).

[2]     However, the Court granted Plaintiff leave to file, within 30 days of the August 18, 2016 Order, a separate document titled "Amendment to the Complaint" asserting claims against one or more John Doe defendants representing the City officials who were personally involved in Plaintiff's alleged wrongful incarceration.  (ECF 18).  Plaintiff did not file this document.

Plaintiff filed an Opposition to Lamper's Motion (ECF 26, "Pl.'s Opp'n"), to which

Lamper filed a reply brief on November 7, 2016 (ECF 27, "Def.'s Reply Br.").

### III.     Factual Background

The following facts are taken from the Second Amended Complaint, and are

accepted as true for purposes of the pending motion.  See Fed. R. Civ. P. 12(b)(6); United

States Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  Lamper is an

employee of the Pennsylvania Department of Corrections ("DOC") and serves as a

supervisor of the Intermediate Punishment Program at the Pennsylvania State

Correctional Institute—Muncy ("Muncy"), a Pennsylvania state prison.  (Second Am.

Compl. ¶ 11).  On January 5, 2012, Plaintiff received a 2-year state intermediate sentence

for drug related offenses.  (Id. ¶ 13).  In May 2013, Plaintiff absconded from Gaudenzia

Addiction Treatment and Recovery Center, where she was serving part of her 2-year

sentence.  (Id. ¶¶ 13-15).  On March 10, 2014, Plaintiff "surrendered herself" to Judge

Rayford A. Means of the Court of Common Pleas, Philadelphia County.  (Id. ¶ 17).  That

same day, Judge Means revoked the state intermediate sentence, and ordered a new

sentence of 18 months of telephone reporting.  (Id. ¶ 18).  Also that day,

"representatives" of the DOC wrote a letter "censuring Judge Means" for revoking the

state intermediate sentence and "informing Judge Means that the [DOC] intended to

detain [Plaintiff] notwithstanding his Order."  (Id. ¶ 19-21).  According to Plaintiff,

Lamper "directed, encouraged, approved, condoned, acquiesced or otherwise ratified" the

contents of that letter. (Id.).

On December 23, 2014, Plaintiff was (1) arrested by Philadelphia law

enforcement for absconding from Gaudenzia, (2) charged by the Philadelphia District

Attorney with 18 Pa. C.S.A. § 5121, an escape violation, and (3) detained at Riverside (a City of Philadelphia prison). (Id. ¶¶ 24-25).  The Judge hearing the case set bail at $50,000.  (Id. ¶ 25).  That day, the DOC also issued a detainer requesting that Plaintiff be detained until she can be returned to the custody of the DOC.  (Id. ¶ 27).  According to Plaintiff, Lamper "directed, encouraged, approved, condoned, acquiesced or otherwise ratified" the issuance of the detainer, (id.), and "representatives" of the DOC notified employees at Riverside about the detainer (id.).

On March 17, 2015, the judge hearing Plaintiff's escape violation case issued an order changing Plaintiff's bail terms to unsecured bail in the amount of $50,000 (the "March 17, 2015 Order").  (Id. ¶ 32).  Despite this modification, Plaintiff remained incarcerated at Riverside from March 17 through June 29, 2015, and then was transferred to Muncy from June 29 through July 2, 2015.[3]  (Id. ¶¶ 33, 38, 39, 42).

According to Plaintiff, Lamper "deliberately chose" not to follow the March 17, 2015 Order, which, inferably, would have allowed Plaintiff to be released on her signature, but for the DOC detainer.  (Id. ¶¶ 124, 126).  Lamper also (1) "facilitated the transfer of the custody of [Plaintiff] from [Riverside] to [Muncy] under the false pretense" of the DOC's detainer (id. ¶ 127); (2) was "notified" of the March 17, 2015 Order on June 30, 2015, by telephone, and again on July 1, 2015, by written correspondence (id. ¶¶ 40-41); and (3) "possessed authority to order inmates . . . released from state custody" (id. ¶ 121).

---

[3]     While Plaintiff alleges in the Second Amended Complaint that she was transferred from Riverside to Muncy on June 29, 2015, the Municipal Court of Philadelphia County docket sheet, attached as Exhibit 3 to the Second Amended Complaint (ECF 11-3), indicates that Plaintiff was in custody at Riverside on January 6, 2015, and at Muncy on February 5, 2015.  The Court does not rely on this in reaching its conclusion to deny Lamper's motion, yet notes its potential relevance at a later stage.

The Commonwealth "nolle prossed" the escape charge on August 12, 2015.  (<u>Id.</u> ¶ 43).

## IV.     Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Judgment on the pleadings is appropriate only when the movant "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  <u>Rosenau v. Unifund Corp.</u>, 539 F.3d 218, 221 (3d Cir. 2008).  "The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." <u>Zion v. Nassan</u>, 283 F.R.D. 247, 254 (W.D. Pa. 2012).  Either motion may be used to seek the dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6), (h)(2)(B).  The only difference between the two motions is that a Rule 12(b) motion must be made before a "responsive pleading" is filed, whereas a Rule 12(c) motion can be made "[a]fter the pleadings are closed."  Fed. R. Civ. P. 12(b),(c).

The United States Supreme Court has established a two-part test to determine whether to grant a motion to dismiss or motion for judgment on the pleadings.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  First, the court must ascertain whether the complaint is supported by well-pleaded factual allegations.  <u>Iqbal</u>, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Twombly, 550 U.S. at 555.  In turn, these factual allegations must be sufficient to provide a defendant the type of notice contemplated in Rule 8.  See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Taking the well-pleaded facts as true, the court must then determine whether the plaintiff is "plausibly" entitled to relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  That is, the pleadings must contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 679.  In short, a complaint must not only allege entitlement to relief, but must also demonstrate such entitlement with sufficient facts to push the claim "across the line from conceivable to plausible."  Id. at 683; accord Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

When parties attach factual material to support or contest a motion for judgment on the pleadings, the court may convert the motion to one for summary judgment. Federal Rule of Civil Procedure 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, Rule 12(d) is not triggered for "undisputedly authentic documents that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir. 1993)).

6

Lamper attaches her declaration to her Motion.  (ECF 24-1, "Lamper Decl.").
Plaintiff also attaches nine exhibits, including a declaration, to her Opposition to
Lamper's Motion (ECF 26-1, Ex. 9 "Zahner Decl."), many of which she relies upon in
her brief.  (Pl.'s Opp'n at 6-8.)  Because the newly-attached documents are neither
"undisputedly authentic" nor do they contain facts that are undisputed, pursuant to Rule
12(d), the Court will not consider them in deciding the instant Motion.

## V.    Discussion

### a.  Count Five States a Claim against Lamper

Count Five of the Second Amended Complaint alleges that Lamper is liable under
Section 1983 for violating Plaintiff's Eighth and Fourteenth Amendment Rights.   There
is no dispute that Plaintiff's incarceration from March 17, 2015 to July 2, 2015 amounted
to a constitutional violation.  (See Def.'s Mot. at 12).[4]  Instead, Lamper argues that she is
entitled to judgment on the pleadings because she played no "affirmative role in
Plaintiff's incarceration, and rather was the individual who ensured that Plaintiff was
released."  (Def.'s Mot. at 7).  Rather, she argues, "Plaintiff's continued incarceration
was a consequence of her modified probationary sentencing order not being properly
conveyed to [Muncy] or [to the DOC]."  (Def.'s Reply Br. at 5.)

Plaintiff, for her part, argues that "[w]hat role [Defendant] . . . played in causing
[Plaintiff] to remain wrongfully detained in the Riverside City of Philadelphia
Correctional Facility and transferred to [Muncy] for further detention remains a genuine
question of fact to be resolved by a jury." (Pl.'s Opp'n at 8).

---

[4]    In her Motion, Lamper admits that Plaintiff's incarceration was unconstitutional
beginning on December 10, 2014, which is before Plaintiff alleges the violation began.
The exact length of and reason for Plaintiff's unlawful detention must be ascertained after
discovery.

In the context of an Eighth Amendment claim for detention beyond a plaintiff's maximum term of imprisonment, the Third Circuit has held that a plaintiff must demonstrate three elements to establish Section 1983 liability against a prison official: "(1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention." Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010), as amended (May 25, 2010).

Similarly, a prisoner can assert a Fourteenth Amendment due process challenge based on confinement in excess of a release date where "(1) the process [the prisoner] received in connection with the rejection of his [liberty interest] claims was constitutionally inadequate, (2) [the defendant] authorized that constitutionally inadequate process, and (3) the process authorized by [the defendant] caused [the prisoner's] prolonged imprisonment." Sample v. Diecks, 885 F.2d 1099, 1114 (3d Cir. 1989).

In its Order, dated June 30, 2016, the Court denied the Corrections Defendants' motion to dismiss Count Five.  The Court explained that Plaintiff's allegations, "although vague as to when Lamper was notified of the order's existence and the specifics of what occurred, suffice[d] to allege that Lamper declined to exercise her authority to release Plaintiff despite Lamper's knowledge that Plaintiff was being wrongfully imprisoned when Plaintiff arrived at Muncy."  (ECF 9 at 7-8).

The Court reaches the same conclusion today.

With respect to Lamper's knowledge of Plaintiff's unlawful detention, Plaintiff alleges for the first time in the Second Amended Complaint that "[o]n June 30, 2015 [*sic*], [Lamper] was notified by telephone that [Plaintiff] had been unlawfully detained since March 17, 2015 [*sic*]," and again "[o]n July 1, 2015, [Lamper] was notified by written correspondence that [Plaintff] had been unlawfully detained since March 17, 2015 [*sic*]."[5]  (Second Am. Compl. ¶¶ 40-41).  Although Plaintiff does not allege that the June 30 telephone call was the *first* time that Lamper was made aware of Plaintiff's unlawful detention, other allegations contained in the Second Amended Complaint permit the inference that Lamper had knowledge of Plaintiff's unlawful detention prior to June 30. For instance, Plaintiff alleges that Lamper "facilitated the transfer of custody of [Plaintiff] from [Riverside] to [Muncy]"—which occurred on June 29—and that Lamper "deliberately chose" not to follow or implement the March 17, 2015 Order.  (Id. ¶¶ 124, 126-127).  According to Plaintiff, the decision not to follow the March 17, 2015 Order was based on the issuance of the detainer issued by the DOC, in which Lamper participated.  (Id. ¶¶ 29, 38).

Plaintiff's Second Amended Complaint also adequately alleges that Lamper had the authority to release Plaintiff from custody following the March 17, 2015 Order, such that her failure to do so "was a product of deliberate indifference to [Plaintiff's] plight."

---

[5]     In its June 30, 2016 Order denying the Corrections Defendants' motion to dismiss Count Five, the Court expressly noted that it had not considered Plaintiff's contention—made for the first time in Plaintiff's opposition brief rather than in the Amended Complaint—that Defendant "was notified of the March 2015 order on June 30 (via telephone) and July 1 (via written correspondence), leading to Plaintiff being released on July 2." (ECF 9 at 7 n.3).  The Court indicated, however, that "more detail as to her claims against Lamper would be helpful."  (Id. at 8).

Montanez, 603 F.3d at 252.  Specifically, Plaintiff alleges that Lamper "possessed authority to order inmates such as plaintiff released from state custody."  (Id. ¶ 121).  Plaintiff acknowledges that she was only *physically* in state custody once she was transferred from Riverside to Muncy, i.e. from June 29 to July 2.  (Id. ¶ 42).  However, Plaintiff alleges that Lamper was involved in the issuance and enforcement of a detainer—by the Pennsylvania *state* DOC—pursuant to which Plaintiff alleges she was "caused to remain involuntarily incarcerated at [Riverside] from Match 17, 2015 up and until June 29, 2015."  (Id. ¶¶ 29, 38).  This is sufficient to raise an inference that Plaintiff's unlawful detention was the result of Lamper's exercise of her authority, or failure to act when she had a duty to do so.

Accordingly, Plaintiff's Second Amended Complaint is sufficient to state a claim against Lamper under Section 1983.  Specific facts regarding (1) when Lamper became aware of Plaintiff's unlawful detention, (2) Lamper's role in issuing and enforcing the detainer prior to Plaintiff's release from custody, and (3) the extent to which the detainer was relied upon as the basis for Riverside's non-compliance with the March 17, 2015 Order must be learned in discovery.   The Court has not considered the Plaintiff's declaration in reaching this conclusion.  However, discovery should proceed with a focus towards the information listed in paragraph 14 of Plaintiff's Declaration.  (See Zahner Decl. ¶ 14).

### b.  Qualified Immunity

Lamper additionally argues that, regardless of the sufficiency of the Second Amended Complaint, she is entitled to qualified immunity because "Plaintiff's sentence

modification was not clearly established."  (Def.'s Mot. at 6).  Plaintiff responds that qualified immunity cannot shield Lamper from liability because "no reasonable official would fail to appreciate that deliberately choosing not to implement a sentencing order of the court would amount to unlawful conduct."  (Pl.'s Opp'n at 11).

The Supreme Court has held that because qualified immunity shields officers from suit, not just from trial, the district court should "resolve any immunity question at the earliest possible stage of the litigation," Anderson v. Creighton, 483 U.S. 635, 646 n.6. However, the Third Circuit has warned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."  Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009); see also Garey v. Borough of Quakertown, 2012 WL 3562450, at *3 (E.D. Pa. Aug. 20, 2012) (Baylson, J.).

Taking Plaintiff's allegations as true, at this juncture, the Court is unable to hold that Lamper is shielded from Section 1983 liability because it would not have been clear to a reasonable officer that her conduct violated a constitutional right.  Lamper is free to reassert qualified immunity at summary judgment or at trial.

## VI.    Conclusion

For the foregoing reasons, Lamper's Motion for Judgment on the Pleadings will be DENIED, and this case will proceed as to Count Five.

An appropriate Order follows.

O:\Jessica.2016\16-cv-2635, Zahner v. City of Philadelphia\Memo Re Motion for Judgment on the Pleadings.docx